**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | | |
|---|---|---|
| DEBORAH CONTRERAS, | ) | No. ED CV 09-857-PLA |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OPINION AND ORDER** |
| v. | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on May 11, 2009, seeking review of the Commissioner's denial of her application for Supplemental Security Income payments.  The parties filed Consents to proceed before the undersigned Magistrate Judge on June 1, 2009, and June 3, 2009.  The parties filed a Joint Stipulation on December 4, 2009, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## <u>BACKGROUND</u>

Plaintiff was born on March 6, 1961. [Administrative Record ("AR") at 113.] She completed school through the eighth grade, and has past relevant work experience as a waitress and a stock clerk. [AR at 123-26, 169, 373.]

On August 25, 2004, plaintiff filed an application for Supplemental Security Income payments, alleging that she has unable to work since January 4, 2003, due to depression, schizophrenia, hepatitis A, B and C, and recovering drug addiction. [AR at 157, 163-64.] After her application was denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 45, 52, 57.] A hearing was held on December 5, 2006, at which plaintiff appeared with counsel and testified on her own behalf. [AR at 352-76.] A vocational expert also testified. [AR at 373-75.] On January 9, 2007, the ALJ determined that plaintiff was not disabled, finding that "there are jobs that exist in significant numbers" that plaintiff can perform. [AR at 38-44.] Plaintiff requested review of the hearing decision. [AR at 84.] The Appeals Council granted plaintiff's request for review and on May 3, 2007, it vacated the hearing decision and remanded the case to an ALJ to resolve the issues it identified, including requiring the ALJ to discuss the opinions of the State Agency physicians. [AR at 87-90.]

On August 21, 2007, a hearing was held before a different ALJ at which plaintiff again appeared with counsel and testified on her own behalf. [AR at 377-400.] A medical expert and a vocational expert also testified at the hearing. [AR at 385-89, 397-99.] On November 26, 2007, another medical expert submitted an opinion. [AR at 348-51.] On February 13, 2008, the ALJ determined that plaintiff was not disabled. [AR at 12-21.] Plaintiff requested review of the hearing decision. [AR at 7.] On April 2, 2009, the Appeals Council denied plaintiff's request for review. [AR at 4-6.] This action followed.

/

/

/

/

**III.**

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.


**IV.**

**THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.


**A.     THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended Apr. 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the

1   claimant is not disabled and the claim is denied.  20 C.F.R. §§ 404.1520(b), 416.920(b); Lester,

2   81 F.3d at 828 n.5.  If the claimant is not currently engaged in substantial gainful activity, the

3   second step requires the Commissioner to determine whether the claimant has a "severe"

4   impairment or combination of impairments significantly limiting her ability to do basic work

5   activities; if not, a finding of nondisability is made and the claim is denied.  20 C.F.R. §§

6   404.1520(c), 416.920(c); Lester, 81 F.3d at 828 n.5.  If the claimant has a "severe" impairment or

7   combination of impairments, the third step requires the Commissioner to determine whether the

8   impairment or combination of impairments meets or equals an impairment in the Listing of

9   Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is

10   conclusively presumed and benefits are awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d); Lester,

11   81 F.3d at 828 n.5.  If the claimant's impairment or combination of impairments does not meet or

12   equal an impairment in the Listing, the fourth step requires the Commissioner to determine

13   whether the claimant has sufficient residual functional capacity ("RFC")[1] to perform her past work;

14   if so, the claimant is not disabled and the claim is denied.  20 C.F.R. §§ 404.1520(e), 416.920(e);

15   Lester, 81 F.3d at 828 n.5.  The claimant has the burden of proving that she is unable to perform

16   past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie

17   case of disability is established.  Id.  The Commissioner then bears the burden of establishing

18   that the claimant is not disabled because she can perform other substantial gainful work

19   available in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999).  The

20   determination of this issue comprises the fifth and final step in the sequential analysis.  20

21   C.F.R. §§ 404.1520(g), 416.920(g); Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

22

23   **B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

24          In this case, at step one, the ALJ concluded plaintiff has not engaged in any substantial

25   gainful activity since August 25, 2004, the application date.  [AR at 14.]  At step two, the ALJ

26

27   _____

28          [1]   RFC is what a claimant can still do despite existing exertional and nonexertional
     limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

4

1    concluded that plaintiff has the "severe" impairments of obesity, edema, drug addiction, and

2    depression.  [Id.]  At step three, the ALJ determined that plaintiff's impairments, individually or in

3    combination, do not meet or equal any of the impairments in the Listing.  [Id.]  The ALJ further

4    found that plaintiff retained the RFC to perform a "narrowed range" of light work[2] with various

5    limitations.  [AR at 16.]  At step four, the ALJ concluded that plaintiff was unable to perform her past

6    relevant work as a retail sales clerk.  [AR at 20.]  At step five, the ALJ concluded that there are jobs

7    that exist in significant numbers in the national economy that plaintiff can perform, including swatch

8    clerk, lens gauger, and systems surveillance monitor.  [AR at 20-21.]  Accordingly, the ALJ

9    determined that plaintiff is not disabled.  [AR at 21.]

10

11                                              **V.**

12                                    **THE ALJ'S DECISION**

13           Plaintiff contends that the ALJ failed to:  (1) properly consider Dr. Nguyen's Work Capacity

14   Evaluation (Mental); (2) properly consider the lay witness testimony; (3) make proper credibility

15   findings; and (4) properly consider the type, dosage, effectiveness and side effects of plaintiff's

16   medication.  [Joint Stipulation ("JS") at 2-3.]  As set forth below, the Court respectfully disagrees

17   with plaintiff and affirms the ALJ's decision.

18

19   **A.     DR. NGUYEN'S FINDINGS**

20           Plaintiff contends that the ALJ failed to properly consider Dr. Han V. Nguyen's Work

21   Capacity Evaluation (Mental).  [JS at 3.]  Specifically, plaintiff argues that the ALJ failed to provide

22   specific and legitimate reasons for rejecting a treating psychiatrist's opinion.  [JS at 5.]

23           In evaluating medical opinions, the case law and regulations distinguish among the opinions

24   of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who

25

26   _____

27       [2]    Light work is defined as work that involves "lifting no more than 20 pounds at a time with
     frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. §§ 404.1567(b),
28   416.967(b).  Light work may involve "a good deal of walking or standing" or "sitting most of the
     time with some pushing and pulling of arm or leg controls."  Id.

1   examine but do not treat the claimant (examining physicians); and (3) those who neither examine

2   nor treat the claimant (non-examining physicians).  See 20 C.F.R. §§ 404.1527, 416.927; see also

3   Lester, 81 F.3d at 830.  Generally, the opinions of treating physicians are given greater weight

4   than those of other physicians, because treating physicians are employed to cure and therefore

5   have a greater opportunity to know and observe the claimant.  Orn v. Astrue, 495 F.3d 625, 631

6   (9th Cir. 2007); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).  Despite the presumption

7   of special weight afforded to treating physicians' opinions, an ALJ is not bound to accept the

8   opinion of a treating physician.  The ALJ, however, may only give less weight to a treating

9   physician's opinion that conflicts with the medical evidence if the ALJ provides specific and

10  legitimate reasons for discounting the opinion.  See Lester, 81 F.3d at 830-31 (stating that the

11  opinion of a treating doctor, even if contradicted by another doctor, can only be rejected for

12  specific and legitimate reasons that are supported by substantial evidence in the record); see also

13  Orn, 495 F.3d at 632-33 ("[e]ven when contradicted by an opinion of an examining physician that

14  constitutes substantial evidence, the treating physician's opinion is 'still entitled to deference.'")

15  (citations omitted); Social Security Ruling[3] 96-2p (a finding that a treating physician's opinion is

16  not entitled to controlling weight does not mean that the opinion is rejected).

17         Dr. Nguyen of the San Bernardino County Department of Behavioral Health, Phoenix

18  Outpatient Clinic ("Phoenix Clinic") began treating plaintiff in June 2003.  [AR at 166.]  In a Mental

19  Disorder Questionnaire Form dated November 14, 2004 (the "Questionnaire"), Dr. Nguyen

20  diagnosed plaintiff with major depression, recurrent and severe with psychotic features, and

21  hepatitis A, B, and C.[4]  [AR at 247-50.]  Dr. Nguyen opined that plaintiff is "prone to depression,"

22

---

23      [3]   Social Security Rulings ("SSR") do not have the force of law.  Nevertheless, they "constitute

24  Social Security Administration interpretations of the statute it administers and of its own
    regulations," and are given deference "unless they are plainly erroneous or inconsistent with the

25  Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

26      [4]   Dr. Nguyen is a psychiatrist, not an internal medicine physician, and plaintiff appears to

27  have self-reported a diagnosis of hepatitis A, B, and C.  [AR at 249, 341.]  Dr. Nguyen's treating
    notes do not reference any tests for hepatitis.  [AR at 282-317, 332-44.]  Plaintiff's medical records

28  from Molina Medical Centers, where she received primary care, only reflect a hepatitis C
    diagnosis.  [AR at 233, 243, 256.]

"has difficulty remembering and focusing on various tasks," needs help with basic household tasks, and is inept with dealing with job-related stress. [AR at 247, 249.] Dr. Nguyen prescribed Seroquel, Effexor, Xanax, and Buspirone for plaintiff. [AR at 317.] Dr. Nguyen's treatment notes reflect that plaintiff missed appointments on a regular basis and failed to properly comply with her medication plan. [See, e.g., AR at 282-84, 293-95.] Despite plaintiff's poor compliance with her medication plan, Dr. Nguyen consistently noted that plaintiff is able to handle her own medications. [AR at 310, 317, 342-44.] In a Work Capacity Evaluation (Mental) dated December 11, 2006 (the "Evaluation"), Dr. Nguyen indicated that plaintiff's functional limitations are almost all marked.[5] [AR at 318-19.] Plaintiff specifically challenges the ALJ's rejection of the Evaluation.

In the February 13, 2008, decision, the ALJ concluded that the medical evidence indicated that plaintiff's depression was severe, but that she is mentally capable of performing "simple, routine, repetitive, entry level tasks." [AR at 14, 16.] In reaching that conclusion, the ALJ rejected both of Dr. Nguyen's opinions and gave great weight to the opinions of a medical expert and State Agency physicians. [AR at 18-20.] The ALJ rejected the 2004 Questionnaire because it is not supported by Dr. Nguyen's treating notes, is inconsistent with the opinions of the non-examining physicians and expert, and is not supported by medically acceptable diagnostic techniques. [AR at 18-19.] With respect to the 2006 Evaluation, the ALJ stated that he could not determine who authored the opinion and thus the author's qualifications were unknown. [AR at 19.] The ALJ, however, also provided other grounds for rejecting the Evaluation, noting that Dr. Nguyen's treating notes do not support the findings and "the author did not consider [plaintiff's] recent drug use" and noncompliance with her medication plan. [Id.]

Plaintiff contends that the ALJ's reasoning for rejecting Dr. Nguyen's Evaluation "is not legitimate." [JS at 4.] Plaintiff argues that: 1. the ALJ could have easily determined that Dr. Nguyen authored the Evaluation; 2. the ALJ failed to provide specific evidence contradicting Dr. Nguyen's findings; and 3. the Evaluation required Dr. Nguyen to evaluate plaintiff independent of

---

[5]   The Evaluation form defines "marked" as a severely limited ability to function in the area, but not a preclusion from functioning. [AR at 318.]

1   her drug use.  [JS at 4-5.]  The Court agrees that the ALJ could have determined the author of the

2   Evaluation and Dr. Nguyen properly evaluated plaintiff's limitations independent of her drug use,

3   but it disagrees with plaintiff's remaining contention.

4          A simple comparison of signatures in Dr. Nguyen's treating notes and the Evaluation would

5   have informed the ALJ that Dr. Nguyen authored the Evaluation [compare AR at 306 with AR at

6   319], but the ALJ's failure to recognize authorship is not a ground for remand.  Despite not

7   knowing the author, the ALJ provided a specific and legitimate reason for rejecting the opinion,

8   specifically noting that Dr. Nguyen's treating notes did not support the opinion.  [AR at 19.]  See

9   Lusardi v. Astrue, 350 Fed. Appx. 169, 172 (9th Cir. 2009) ("Rejecting an opinion on the basis that

10  it is not supported by the doctor's own treatment notes or by clinical findings is permissible.")

11  (citable for its persuasive value pursuant to Ninth Circuit Rule 36-3); Tonapetyan v. Halter, 242

12  F.3d 1144, 1149 (9th Cir. 2001) (finding it proper for the ALJ to reject a treating physician's opinion

13  because it was unsupported by treatment notes).  Although the ALJ did not discuss in detail how

14  Dr. Nguyen's notes fail to support the Evaluation, as discussed below, the ALJ's reasons for

15  rejecting the Questionnaire, including his discussion of why Dr. Nguyen's treating notes were

16  inconsistent with his opinion, apply equally here.  Further, to the extent that the Court can decipher

17  the treating notes, it can find nothing in the notes -- and plaintiff points to nothing -- to support Dr.

18  Nguyen's opinion that plaintiff's limitations are "marked."   Indeed, plaintiff's own attorney

19  acknowledged that Dr. Nguyen did not address vocational issues in his treatment notes.  [AR at

20  355-56.]

21         Moreover, the ALJ's reasons for rejecting the Questionnaire are equally applicable to the

22  Evaluation.  The ALJ provided multiple reasons for rejecting the Questionnaire, most significant

23  of which were that the conclusions were not supported by Dr. Nguyen's own treatment notes and

24  were inconsistent with the other psychiatric medical opinions.  [AR at 18-19.]  First, like the

25  Evaluation, the ALJ found that the Questionnaire is "not supported by [Dr. Nguyen's] treating

26  notes."  [AR at 18.]  The ALJ specifically noted that the treatment notes reflect that plaintiff only

27

28

8

1   required routine outpatient care and her Global Assessment of Functioning ("GAF") score was 52.[6]

2   The conservative care and GAF score assessed by Dr. Nguyen are inconsistent with his opinion

3   that plaintiff needs "supervision with basic household tasks," her "daily activities have become

4   more unattainable," and plaintiff is "inept dealing with job-related stress."   [AR at 249.]   The

5   inconsistencies between Dr. Nguyen's treatment notes and his disability opinion provided in the

6   Evaluation were a valid basis for the ALJ to reject the Evaluation.   See Weetman v. Sullivan, 877

7   F.2d 20, 23 (9th Cir. 1989) (a physician's opinion may be rejected where it is inconsistent with the

8   physician's own treatment notes); Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ

9   properly rejected treating physician's opinion where conservative course of treatment was

10   inconsistent with the physician's disability opinion); Howes v. Astrue, 2009 WL 1659673, at *10

11   (E.D. Wash. June 11, 2009) (ALJ properly rejected physician's opinion that plaintiff had marked

12   mental limitations where the same physician assessed an inconsistent GAF score, "indicating only

13   mild to moderate symptoms").

14          Second, the ALJ found Dr. Nguyen's opinion in the Questionnaire to be inconsistent with

15   the findings of two State Agency psychiatrists and a medical expert.   [AR at 19.]   Dr. Joseph

16   Malancharuvil, a medical expert,[7] diagnosed plaintiff with major depressive disorder, recurrent with

17   psychotic features, but opined that plaintiff's impairments are "at worst moderate in some areas"

18   and that plaintiff can perform "simple to moderately complex work."   [AR at 348.]   Dr. K. Gregg,

19   a State Agency psychiatrist, noted that Dr. Nguyen's opinion in the Questionnaire was inconsistent

20   with her contacts with Dr. Nguyen and her daily functioning.   [AR at 154.]   He concluded that

21   plaintiff's depression is "not as severe as alleged" and "by all other accounts show[ed] no

22

23          [6]   A Global Assessment of Functioning score is the clinician's judgment of the individual's
24   overall level of functioning.   It is rated with respect only to psychological, social, and occupational
     functioning, without regard to impairments in functioning due to physical or environmental
25   limitations.   Diagnostic and Statistical Manual of Mental Disorders, at 32 (4th Ed. 2000).   A GAF
     score between 51-60 indicates moderate symptoms or moderate difficulty in social, occupational
26   or school functioning.   Id. at 34.

27          [7]   Although Dr. Malancharuvil is not a medical doctor, he is a licensed psychologist and is an
28   acceptable medical source for purposes of this analysis.   See 20 C.F.R. §§ 404.1513(a)(2),
     416.913(a)(2).

1    impairment." [AR at 277.]  Dr. Gregg opined that plaintiff is "capable of at least [simple repetitive

2    tasks.]"  [Id.]  Dr. Gregg also noted that plaintiff displayed no difficulty dealing with different people

3    concerning her SSI application.  [AR at 154-55, 158-59, 161.]  Another State Agency psychiatrist,

4    Dr. H. Amado, affirmed Dr. Gregg's assessment.   [AR at 280.]  While the opinion of a non-

5    examining physician cannot, by itself, constitute substantial evidence that justifies rejecting the

6    opinion of a treating physician, it may be accepted as substantial evidence if supported by other

7    evidence.  See Lester, 81 F.3d at 831; Andrews, 53 F.3d at 1043 (finding that the ALJ properly

8    rejected an examining physician's opinion when the non-examining expert's controverting opinion

9    was supported by the medical records, was consistent with other medical experts, and was

10   consistent with plaintiff's testimony); Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989)

11   (relying on the non-examining doctor's contradictory opinion, laboratory results, and plaintiff's own

12   testimony to reject the treating doctor's opinion).  These non-examining physicians' opinions are

13   supported by plaintiff's medical records, which do not address any functional limitations, and

14   plaintiff's own statements concerning her daily activities and interactions with others.  In contrast

15   to Dr. Nguyen's opinion that plaintiff needs help with basic household tasks and is unable to

16   perform daily activities, plaintiff stated that she, inter alia, takes care of her daughter, cooks,

17   cleans, completes crossword puzzles, talks to people regularly, and goes to the methadone clinic

18   every day. [AR at 144-48, 249, 382, 393.]

19          In addition to these reasons, the ALJ noted that the Questionnaire is "not well-supported

20   by medically acceptable clinical and laboratory diagnostic techniques."  [AR at 19.]  As Dr.

21   Malancharuvil indicated in his opinion, plaintiff's complaints were "not supported by objective

22   evidence such as psychological assessments with standardized tests," and her medical records

23   indicate that the last psychiatric assessment performed on her was from November 2004. [AR at

24   348.]  The ALJ also noted that the Questionnaire may not have been based on accurate

25   information because plaintiff may not have been forthright about her drug use with Dr. Nguyen.

26   [AR at 19.]  Plaintiff testified that she started using drugs again in 2002, but Dr. Nguyen noted in

27   the Questionnaire in 2004 that plaintiff was not using drugs.  [AR at 247, 367.]  Cf. Andrews, 53

28

1   F.3d at 1042 (stating that an ALJ can properly accord less weight to an opinion premised on a

2   plaintiff's self-reporting of his symptoms once plaintiff's credibility has been discounted).

3        All of these reasons are specific and legitimate reasons, supported by substantial evidence,

4   for rejecting the Evaluation.[8] As the ALJ provided specific and legitimate reasons, supported by

5   substantial evidence, for rejecting Dr. Nguyen's opinion, remand is not warranted on this issue.

6

7   **B.**    **THE ALJ'S CONSIDERATION OF LAY WITNESS TESTIMONY**

8        Plaintiff contends that the ALJ improperly rejected lay witness testimony.  [JS at 10.]

9   Specifically, plaintiff argues that the ALJ failed to provide germane reasons for rejecting a third

10   party function report submitted by Bronlio F. Lopez, Jr.  [JS at 11; AR at 135-43.]

11        An ALJ may consider lay witness testimony to determine the severity of a claimant's

12   impairments and how the impairments affect her ability to work.  Stout v. Comm'r, 454 F.3d 1050,

13   1053 (9th Cir. 2006); Smolen, 80 F.3d at 1288; 20 C.F.R. §§ 404.1513(d)(4), (e), 416.913(d)(4),

14   (e).  Lay witnesses include spouses, parents and other care givers, siblings, other relatives,

15   friends, neighbors, and clergy.  20 C.F.R. §§ 404.1513(d)(4),  416.913(d)(4).  Thus, lay witness

16   testimony by friends and family members who have the opportunity to observe a claimant on a

17   daily basis "constitutes qualified evidence" that the ALJ must consider.  See Sprague v. Bowen,

18   812 F.2d 1226, 1231-32 (9th Cir. 1987); Smolen, 80 F.3d at 1289 (testimony from lay witnesses,

19   who see the plaintiff on a daily basis and are often family members, is of particular value); Dodrill

20   v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993) ("[a]n eyewitness can often tell whether someone is

21   suffering or merely malingering . . . [T]his is particularly true of witnesses who view the claimant

22   _____

23        [8]   The Court notes that the ALJ's other reasons for rejecting Dr. Nguyen's opinion are not
specific and legitimate reasons supported by substantial evidence.  First, the ALJ stated that Dr.

24   Nguyen failed to consider plaintiff's noncompliance with her medication plan.  [AR at 19.]  The ALJ
cited no evidence to support such a conclusion, and the Court finds no basis in the record to

25   support the conclusion.  Second, Dr. Nguyen's failure to consider plaintiff's recent drug use was
not in error as the Evaluation form required Dr. Nguyen to assess plaintiff's limitations independent

26   of her drug abuse.  [AR at 318.]

27        Further, although not mentioned by the ALJ, the ALJ may reject "check-off reports that do
not contain any explanation of the bases of their conclusions," such as the Evaluation.  Crane v.

28   Shalala, 76 F.3d 251, 253 (9th Cir. 1996).

1    on a daily basis. . .").  The ALJ may discount the testimony of lay witnesses only for "reasons that

2    are germane to each witness."  Dodrill, 12 F.3d at 919; Regennitter v. Comm'r, 166 F.3d 1294,

3    1298 (9th Cir. 1999).

4         In the third party function report, Mr. Lopez stated that he has known plaintiff for fifteen

5    years and spends four hours a week with her.  [AR at 135.]  During those four hours, Mr. Lopez

6    eats and watches movies with plaintiff.  [Id.]  Mr. Lopez reported that sometimes he helps plaintiff

7    with her laundry.  [AR at 137.]  He stated that plaintiff is able to cook, clean, do other household

8    chores, shop, pay bills, and raise her daughter.  [AR at 135-38.]  In addition, Mr. Lopez stated that

9    plaintiff leaves her home on a daily basis and goes out by herself.  [AR at 138.]  Mr. Lopez

10   reported that plaintiff is "always tired," "forgets things," and has "bad concentration."  [AR at 136,

11   140.]  He stated that plaintiff needs reminders to take her medication.  [AR at 137.]  The ALJ

12   rejected Mr. Lopez's testimony on the basis that it was "not entirely credible."  [AR at 17.]

13        Plaintiff argues that the ALJ failed to provide germane reasons for rejecting Mr. Lopez's

14   testimony.  [JS at 11.]  The Court agrees.  The ALJ summarily rejected Mr. Lopez's testimony as

15   not credible without providing a germane reason to support such a conclusion.  The ALJ's failure

16   to provide germane reasons, however, was harmless error.

17        An ALJ's decision will not be reversed for failure to give specific reasons for rejecting lay

18   testimony if the error was harmless.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("A

19   decision of the ALJ will not be reversed for errors that are harmless.").  When the ALJ fails to

20   consider lay witness testimony and there is substantial evidence in the record supporting the ALJ's

21   reasoning and ultimate credibility determination, the relevant inquiry for the Court is whether the

22   ALJ's decision remains "legally valid" despite such error.  Carmickle v. Comm'r, 533 F.3d 1155,

23   1162 (9th Cir. 2008).  See Batson v. Comm'r, 359 F.3d 1190, 1197 (9th Cir. 2004) (finding ALJ's

24   error harmless because it did not negate the validity of the ALJ's conclusion).  If the ALJ fails to

25   provide any reason for rejecting lay witness testimony and there is nothing in the record to

26   determine whether the ALJ's determination was supported, then the error is harmless only when

27   "no reasonable ALJ, when fully crediting the testimony, could have reached a different disability

28   determination."  Stout, 454 F.3d at 1056.  See Carmickle, 533 F.3d at 1162-63.

Here, Mr. Lopez's statements were not of value.[9]  Mr. Lopez spent a mere four hours a week with plaintiff, time which was typically spent eating and watching movies.  [AR at 135.]  This does not constitute sufficient contact that would render Mr. Lopez's comments as to plaintiff's daily activities of "particular value."  Smolen, 80 F.3d at 1289.  See also Crane v. Shalala, 76 F.3d 251, 254 (9th Cir. 1996) (finding that the ALJ did not err in rejecting testimony because the witness did not have sufficient contact with claimant to qualify as a competent lay witness).  Moreover, contrary to plaintiff's contentions, Mr. Lopez's statements, assuming he was competent, primarily describe plaintiff as a functioning, self-sufficient individual who is able to take care of herself, her daughter, and her home.  Mr. Lopez also reported that plaintiff's ability to handle money and social activities has not changed since the allegedly disabling conditions began.  [AR at 139-40.]  Thus, even if fully credited, Mr. Lopez's testimony does not support the functional limitations plaintiff alleges.

Accordingly, the ALJ's decision remains legally valid since the ultimate credibility determination is supported by substantial evidence and no reasonable ALJ, even if crediting the statements, could have reached a different disability determination.  The ALJ's failure to provide germane reasons for rejecting the lay witness testimony was harmless error.

## C.   PLAINTIFF'S CREDIBILITY

Plaintiff contends that the ALJ failed to make proper credibility findings concerning her testimony.[10]  [JS at 13.]  Specifically, plaintiff argues that the ALJ failed to identify the portions of her testimony that the ALJ found not credible and provide clear and convincing reasons for rejecting the testimony.  [JS at 13-14.]  The Court disagrees.

---

[9]   Defendant argues that the ALJ in fact discussed Mr. Lopez's testimony.  [JS at 11.]  It appears to the Court, however, that the ALJ only mentioned Mr. Lopez once in the decision, in his one sentence dismissal of his testimony as not credible.  [AR at 17 ("[T]he claimant's statements and those of her friend . . . are not entirely credible.").]

[10]   Plaintiff also argues that the ALJ failed to make proper credibility findings concerning Mr. Lopez's testimony.  [JS at 13-14.]  This argument is duplicative of plaintiff's contention that the ALJ failed to properly consider lay witness testimony.  As discussed above, the ALJ's failure to provide germane reasons for rejecting Mr. Lopez's testimony was harmless error.

1    Whenever an ALJ discredits a claimant's testimony, the ALJ must make explicit credibility

2    findings.  See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); see also Dodrill, 12 F.3d

3    at 918 (if the ALJ does not accept a claimant's testimony, he must make specific findings rejecting

4    it).  The ALJ can reject a claimant's allegations "only upon (1) finding evidence of malingering, or

5    (2) expressing clear and convincing reasons for doing so."  Benton v. Barnhart, 331 F.3d 1030,

6    1040 (9th Cir. 2003); see Lester, 81 F.3d at 834 (the ALJ must provide clear and convincing

7    reasons for discrediting a claimant's testimony as to severity of symptoms when there is medical

8    evidence of an underlying impairment).  The factors to be considered in weighing a claimant's

9    credibility include:  (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the

10   claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily

11   activities; (4) the claimant's work record; and (5) testimony from physicians and third parties

12   concerning the nature, severity, and effect of the symptoms of which the claimant complains.  See

13   Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c),

14   416.929(c).  It is "not sufficient for the ALJ to make only general findings."  Dodrill, 12 F.3d at 918.

15   Absent evidence showing that the plaintiff is malingering, the ALJ must state which testimony is

16   not credible and identify the evidence that undermines the claimant's complaints.  See id.; see also

17   Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) ("General findings are insufficient; rather, the

18   ALJ must identify what testimony is not credible and what evidence undermines the claimant's

19   complaints.") (quoting Lester, 81 F.3d at 834).  If properly supported, the ALJ's credibility

20   determination is entitled to "great deference."  See Green v. Heckler, 803 F.2d 528, 532 (9th Cir.

21   1986).

22        In the decision, the ALJ determined that plaintiff's medical condition would reasonably

23   produce the alleged symptoms, but found that plaintiff's statements "concerning the intensity,

24   persistence and limiting effects" of her symptoms were "not entirely credible." [AR at 17.]  As the

25   record contains no evidence of malingering by plaintiff,[11] the ALJ was required to justify his

26

27   _____

28   [11] The ALJ made no finding that plaintiff was malingering, nor does the evidence suggest plaintiff was doing so.

14

1   credibility determination with clear and convincing reasons.  See Benton, 331 F.3d at 1040.  The

2   ALJ discounted plaintiff's subjective complaints concerning the intensity, persistence, and limiting

3   effects of her impairments because:  (1) plaintiff poorly complies with her medication plan; (2)

4   plaintiff has missed many of her psychiatric appointments; (3) State Agency physicians and

5   medical experts found that the objective medical evidence did not support plaintiff's claims; and

6   (4) plaintiff gave inconsistent testimony regarding her substance abuse.[12]  [AR at 17, 41.]  As

7   discussed below, the Court finds that the ALJ has provided clear and convincing reasons for

8   discounting plaintiff's testimony.[13]

9        The ALJ first stated his reasons for rejecting plaintiff's credibility and then provided

10  substantial evidence to support his finding.  In support of his credibility finding, the ALJ discussed

11  plaintiff's medical records concerning her physical impairments, as well as the medical opinions

12  of plaintiff's treating physician, the medical experts, and State Agency physicians.  [AR at 18-19.]

13  The ALJ noted that the medical record reflects that plaintiff is obese, has edema, and has hepatitis

14  C.  [AR at 17.]  The ALJ discussed the opinions of the physicians who assessed plaintiff's physical

15  limitations.  [AR at 17-18.]  Dr. G. Taylor-Holmes, a State Agency physician, opined that plaintiff's

16  alleged symptoms and severity of the symptoms were not supported by the medical evidence and

17  that plaintiff can perform light work with certain limitations.  [AR at 18, 252-58.]  Dr. Taylor-Holmes

18  specifically noted that despite plaintiff's claims of "trouble with the strength in her hands," there

19  was no medical evidence to support her claims and the "DO" did not observe plaintiff having any

20  difficulty using her hands.  [AR at 256.]  Moreover, plaintiff alleged that she was receiving

21

22      [12]   The ALJ expressly incorporated the prior decision dated January 9, 2007, into the February
23  13, 2008, decision.  [AR at 12.]

24      [13]   The ALJ also cited plaintiff's criminal record as a basis for rejecting plaintiff's testimony.
    [AR at 17.]  Plaintiff's criminal record, by itself, is not a proper basis for discrediting her testimony.
25  Plaintiff's crimes occurred twenty years ago and did not involve dishonesty.  [AR at 382.]  See
    Hardisty v. Astrue, 592 F.3d 1072, 1075 (9th Cir. 2010) (discussing district court's finding that the
26  Federal Rules of Evidence do not permit "evidence of crimes older than ten years without a further
    balancing of probative value and prejudicial effect").  Although this is not a clear and convincing
27  reason for finding plaintiff not credible, the ALJ's inclusion of this basis is harmless as he provided
28  other clear and convincing reasons for rejecting plaintiff's testimony.

1    treatment for hepatitis A, B, and C, but the record reflects that plaintiff was only diagnosed with

2    hepatitis C and that she had not sought treatment from a specialist.  [Id.]  Dr. Kalmar affirmed Dr.

3    Taylor-Holmes' opinion.  [AR at 279.]  Dr. Samuel Landau, a medical expert, also opined that

4    plaintiff is capable of performing light work.  [AR at 18, 385-89.]

5         The ALJ then discussed the opinions concerning plaintiff's alleged mental impairments.  Dr.

6    Nguyen, plaintiff's treating physician, diagnosed plaintiff with major depression, recurrent and

7    severe with psychotic features, and opined that plaintiff has severe limitations in her ability to work.

8    [AR at 247-50, 318-19.]  As discussed supra, the ALJ properly gave little weight to Dr. Nguyen's

9    opinions.  In contrast, three physicians opined that plaintiff is mentally capable of performing

10   simple repetitive tasks.  Dr. K. Gregg found that plaintiff has affective and substance abuse

11   disorders, but concluded that she is "capable of at least [simple repetitive tasks]."  [AR at 19, 261,

12   265, 277.]  Dr. Gregg further opined that plaintiff has almost no functional limitations, only a mild

13   limitation in maintaining social functioning and moderate limitations with respect to her ability to

14   carry out detailed instructions and maintain concentration.  [AR at 259, 275.]  Dr. H. Amado

15   reviewed all of the evidence and affirmed Dr. Gregg's opinion.  [AR at 19, 265, 280.]  The ALJ

16   noted that Dr. Malancharuvil agreed with Dr. Gregg's and Dr. Amado's assessments.  [AR at 348.]

17   Dr. Malancharuvil determined that plaintiff has a major depressive disorder, recurrent with

18   psychotic features and a history of substance abuse.  [AR at 19, 348.]  He concluded, however,

19   that plaintiff's complaints were unsupported by objective evidence, plaintiff's impairments are "at

20   worst moderate in some areas," and plaintiff can perform simple to moderately complex work.  [AR

21   at 19, 348, 350.]  The ALJ's review of plaintiff's medical records and assessment of these opinions

22   support his reasons for rejecting plaintiff's credibility.

23        The record further shows that plaintiff consistently missed appointments and was in poor

24   compliance with her medication plan.  [See, e.g., AR at 282-85, 301-06.]  Plaintiff's failure to

25   comply with her medical treatment plan is a clear and convincing reason to discredit her testimony,

26

27

28

1   and plaintiff fails to provide a good reason for her noncompliance.[14]  See Montalvo v. Astrue, 237

2   Fed. Appx. 259, 262 (9th Cir. 2007) (finding that plaintiff's failure to comply with certain aspects

3   of her treatment plan was a clear and convincing reason to reject her testimony); Fair v. Bowen,

4   885 F.2d 597, 603 (9th Cir. 1989) (noting that only some reasons, such as those set forth in 20

5   C.F.R. § 404.1530(c), are acceptable for failing to follow a prescribed treatment plan).  Plaintiff

6   contends that her failure to comply with her medication plan and her missed appointments may

7   be "reasonably related to her problems with memory and concentration."  [JS at 14.]  Although

8   plaintiff contends that she needs reminders to take her medications and to go to her doctor's

9   appointments [AR at 146, 149], plaintiff's contentions are belied by her own testimony and

10   activities.  Plaintiff reported that she takes her medication before she goes to bed each day, and

11   testified that she goes to Colton Clinical Services every day for her methadone.  [AR at 144, 382,

12   393.]  Both statements undermine her contention that her impairments affect her memory to the

13   extent that she is noncompliant.

14         The ALJ also noted that the alleged severity of plaintiff's impairments was inconsistent with

15   the findings of the medical experts and State Agency physicians.  [AR at 17-19.]  All of the medical

16   experts and State Agency physicians found that there was a lack of evidence supporting plaintiff's

17   claims and concluded that her impairments are much less severe than she alleges.  Dr.

18   Malancharuvil found plaintiff only "partially credible" as the medical evidence did not support

19   plaintiff's claims that she is depressed, easily frustrated and unable to perform daily activities.  [AR

20   at 17, 348, 350.]  He also noted that plaintiff's reports of physical sensations were not verified by

21   her physician.  [AR at 350.]  Dr. Gregg noted, and Dr. Amado agreed, that plaintiff's depression

22   was "not as severe as alleged" and there was a lack of support in the medical evidence.  [AR at

23   277, 280.]  Likewise, the State Agency physicians who assessed plaintiff's physical limitations also

24   found plaintiff "not fully credible" and that there was a lack of objective medical evidence to support

25   plaintiff's contentions regarding her physical limitations.  [AR at 256, 279.]  The ALJ may properly

26   ———————————————

27        [14]   Plaintiff's failure to follow her treatment plan is also a ground for a finding that she is not
disabled.  20 C.F.R. §§ 404.1530(b), 416.930(b) ("If you do not follow the prescribed treatment

28   without a good reason, we will not find you disabled.")

1   rely on these opinions to reject plaintiff's credibility.  See Amir v. Astrue, 2010 WL 958017, at *6-7

2   (N.D. Cal. March 12, 2010) (ALJ reasonably found plaintiff incredible where a non-examining state

3   agency physician concluded that plaintiff's subjective symptoms were only "partially credible" and

4   "not totally supported" by the medical evidence); Harvey v. Barnhart, 368 F.3d 1013, 1015 (8th Cir.

5   2004) (substantial evidence supported ALJ's conclusion that plaintiff was incredible where

6   plaintiff's treating physicians opined that he was not credible); see also Fair, 885 F.2d at 601-03

7   (while it cannot provide the sole basis for rejecting a claimant's credibility, an ALJ can consider

8   the absence of supporting objective medical evidence in discrediting symptom testimony).

9          Finally, the ALJ, through his adoption of the prior ALJ's decision, cited plaintiff's inconsistent

10   statements concerning her drug use.  [AR at 12, 41.]  Inconsistent testimony regarding drug and

11   alcohol abuse may undermine a claimant's credibility.  See Thomas, 278 F.3d at 959 (finding that

12   plaintiff's conflicting statements about her alcohol and drug usage supported the ALJ's credibility

13   determination).  Sometime between July 21, 2003, and August 31, 2004, plaintiff told her treating

14   physician that she used alcohol and drugs as a teenager, but did not use them currently.  [AR at

15   247, 250.]  On December 5, 2006, she initially testified that she had been clean and sober for the

16   past eleven years.  [AR at 360.]  Plaintiff later testified, however, that she had about six relapses

17   so far that year and had been using drugs since she started hearing voices, which she earlier

18   testified was in 2002.  [AR at 359-60, 367.][15]  As inconsistent statements is a valid basis to reject

19   a plaintiff's credibility, the ALJ properly cited them as clear and convincing reasons for discounting

20   plaintiff's testimony.[16]

21          Accordingly, the ALJ provided clear and convincing reasons for rejecting plaintiff's

22   subjective testimony.  Plaintiff's failure to comply with her medical treatment, testimony from

23

24       [15]   The record indicates that plaintiff routinely used drugs.  On July 13, 2005, plaintiff reported
25   to a representative at the Phoenix Clinic that she had been using cocaine and heroin in the
     previous week.  [AR at 299.]  On August 21, 2007, plaintiff testified that she used heroin and
26   cocaine six months prior.  [AR at 381-82.]

27       [16]   As Dr. Gregg noted, plaintiff's statements about her impairments are also inconsistent with
     her daily activities.  [AR at 277.]  Plaintiff is able to perform housework, do laundry, cook, take care
28   of her daughter, shop, and talk to people on the phone daily.  [AR at 144-48.]

physicians concerning the lack of medical evidence to support plaintiff's allegations, and plaintiff's inconsistent statements are all valid reasons to reject plaintiff's testimony as not entirely credible. See Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (stating that the failure to follow a prescribed treatment plan is a relevant factor in determining a claimant's credibility); Thomas, 278 F.3d at 958-59 (listing a physician's testimony regarding a claimant's symptoms and inconsistencies as factors to consider when determining credibility). As such, the ALJ's credibility determination is entitled to deference. Fair, 885 F.2d at 604.

To the extent plaintiff contends that the ALJ did not specifically identify which testimony he found not credible, the Court disagrees. In forming an RFC and concluding that plaintiff was "mentally" able to "perform simple, routine, repetitive, entry level tasks," the ALJ rejected her testimony in that regard. [AR at 16.] As the ALJ provided specific reasons for doing so, remand is not warranted on this issue.

**D.     SIDE EFFECTS OF MEDICATION**

Plaintiff contends that the ALJ failed to take into consideration the type, dosage, effectiveness, and side effects of her medication as required by SSR 96-7p. [JS at 16-18.] Specifically, plaintiff argues that the ALJ failed to consider the side effects that she experiences as indicated in her Disability Report – Appeal, and the impact they have on her ability to work. [JS at 17-18.] Plaintiff reported that her Effexor medication caused her to experience sleepiness and blurred vision, and that her Seroquel and Xanax medications caused sleepiness as well. [AR at 173.]

Although the side effects of any medication taken by a claimant to alleviate her pain or other symptoms is a factor relevant to an ALJ's disability determination (see 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv); see also SSR 96-7p), the claimant bears the burden of proving that the claimed medication side effects are severe enough to impair her ability to work. See Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985) (the claimant bears the burden of producing clinical evidence showing that the use of narcotic medication impaired her ability to work). Side effects of medications not severe enough to interfere with a claimant's ability to work

1  are properly excluded from consideration.  See Osenbrock v. Apfel, 240 F.3d 1157, 1164 (9th Cir.

2  2001) ("There were passing mentions of the side effects of [the claimant's] medication in some of

3  the medical records, but there was no evidence of side effects severe enough to interfere with [the

4  claimant's] ability to work.").

5        The passing references to side effects from plaintiff's medications are inadequate to

6  establish a disabling condition because there is nothing in the record to show that plaintiff's

7  purported side effects resulted in functional limitations that were severe enough to interfere with

8  her ability to work.[17]  Rather, the only evidence regarding plaintiff's alleged side effect of

9  drowsiness is her own statements to the Social Security Administration in the Disability Report –

10  Appeal.  See Thomas, 278 F.3d at 960 (finding that the ALJ properly excluded claimant's claims

11  of side effects because "[t]he only evidence regarding [side effects were the claimant's] own

12  statements to her doctor and her testimony at the hearing"); see, e.g., Moore v. Astrue, 2009 WL

13  497503, *7 (C.D. Cal. Feb. 26, 2009) ("[r]eferences to side effects made only to the social security

14  administration are not alone evidence that the side effects of the medications are severe enough

15  to affect [the claimant's] ability to work.").  Notably, plaintiff's treatment records indicate that

16  plaintiff experienced no side effects from her medications and plaintiff never mentioned any side

17  effects at her hearings.  [See, e.g., AR at 283, 286, 333, 340.]  Thus, plaintiff did not meet her

18  burden of demonstrating that her use of medications impaired her ability to work.  See Miller, 770

19  F.2d at 849.  Remand is not warranted on this issue.

20

21

22

_____

23    [17]    As support for her claim that the ALJ failed to consider the side effects of Effexor, Seroquel
24  and Xanax, plaintiff refers to a medical guide that identifies the possible side effects from these
    medications.  [JS at 17.]   However, a listing of the common side effects from these particular
25  medications is inadequate to establish that plaintiff actually experiences any side effects with
    sufficient severity to interfere with her ability to work.  See, e.g., Olley v. Astrue, 2008 WL
26  4554883, *6 (C.D. Cal. Oct. 9, 2008) ("The mere fact that a claimant takes a certain medication,
    in and of itself, is not evidence that the claimant also experiences any one of the myriad possible
27  side effects from that medication.  Further, a simple recitation of potential side effects from a
    particular medication does not establish that *this* claimant experiences *these* side effects, which
28  prevents him or her from working for *these* reasons.") (emphasis in original).

1

### VI.

2

### CONCLUSION

3        **IT IS HEREBY ORDERED** that: 1. plaintiff's request for reversal, or in the alternative,

4  remand, is **denied**; and  2. the decision of the Commissioner is **affirmed**.

5        **IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the

6  Judgment herein on all parties or their counsel.

7        **This Memorandum Opinion and Order is not intended for publication, nor is it**

8  **intended to be included in or submitted to any online service such as Westlaw or Lexis.**

9

10

11  DATED: May 28, 2010

12                                          _____
                                                    PAUL L. ABRAMS
13                                          UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28